Next case on this morning's docket is People of the State of Illinois v. Charles Smith. We have Mr. Larry Wells for the appellant, and we have Mr. Patrick Daly for the appellee. When you are ready to proceed today, Mr. Wells. That's fine. You may have to do some reading for us. I'm not sure that we can still. Well, okay. That would be fine, actually. Okay, how are we doing now? I'm fine with it. We thought it was going to fall, but it didn't. It stabilized. Ready? Mm-hmm. May I have your support and counsel? My name is Larry Wells. I'm representing the defendant, Charles Smith, in this cause. Mr. Smith was convicted of aggravated criminal sexual assault and residential burglary, and his convictions were confirmed on direct appeal. He filed a post-conviction petition, and that was dismissed as frivolous. And on appeal from that dismissal, the case was remanded for appointment of counsel and further proceedings. Now, when it went back down, counsel was appointed, but counsel did not appear at the hearing. Mr. Smith appeared at the hearing without counsel. His post-conviction petition was denied, and he's appealing from that denial. There are two issues before this court. First, whether the post-conviction attorney violated Supreme Court Rule 651 in failing to prepare the case. And second, whether the attorney violated 651 by failing to appear at the hearing and present the case. And we'll start with the failure to prepare. Supreme Court Rule 651 requires at a minimum that the attorney be aware of his client's claims and take steps to present those claims. And this attorney failed in both counts. The attorney was not aware of the client's claims. This case languished in the circuit court for years where no one did anything. And Mr. Smith filed motions on his own in support of his post-conviction petition addressing his claims. He presented actual innocence. He tried to get a fingerprint expert appointed. He tried to get DNA experts appointed. And he tried to get DNA testing done through his motions. Now, the post-conviction attorney did not call any of these motions to a hearing. He didn't adopt them. He didn't present them. And he filed instead a motion to withdraw, alleging that he could not go forward with this case ethically. And the standard that's used is exactly the same standard as is used here on appeal in an amicus. The attorney has to present the claims and explain why they can't go forward. And in this case, we have a good record as to what this attorney did. He put a report together, a motion together, and we have a bill that he sent to the county for what he did. And there's nothing in there about him seeking an expert on fingerprints. There's nothing in there about him seeking an expert on DNA. He didn't contact private counsel. He didn't contact me. I was the attorney that got the remand. Let's go back to the first attorney that was appointed upon remand. He did nothing, as far as you're aware. The first attorney, not Capps, who was the second attorney appointed. I don't recall there's anything in the record showing that anything happened for something like five years. So do we know that somebody was notified that they were representing your clients? I believe that the record shows that they were notified. And who was that? Do you know who it was? A public defender of the county, and different public defenders were assigned. But it just went for years. And then Capps got appointed, and all he did was move to withdraw. That's right. So in this motion that he filed to withdraw, there's not one mention of the actual innocence claim. There's nothing about requesting a fingerprint expert. Nothing about the DNA test. Now, this DNA test is crucial. It's the most important evidence in the case, because the true attacker left his ejaculate on the bedclothes, the victim's bedclothes. Mr. Smith knows he didn't do it. He wants that ejaculate tested. It's the most important part of the entire case. And it's not mentioned once in the motion to withdraw. Now, if I came before this court on an Andrews and filed a motion to withdraw, and I failed to mention my client's actual innocence claim and the exonerating ejaculate material, this court would not grant the motion to withdraw. It's not any good. And it's a 651 violation to not be aware of your client's claims. And a 651 violation is per se reversible error. So on that ground alone, the case needs to be reversed. But this attorney was not simply unaware of the basic claims, the basic theory of the case. Even when he was aware of a claim, he didn't do what he needed to do to support it. The state's strongest evidence is fingerprints. There's no identification of the attacker. They have fingerprints. Mr. Smith attacks with his post-conviction petition exonerating fingerprint reports, exonerating fingerprint reports. The defense theory of the case is that there are two sets of reports, exonerating reports that were never disclosed, and then later, reports that were prepared which made him look guilty. And those were the only ones disclosed. Now, the state's theory of the case is that the exonerating fingerprint reports were forged. Those are forgeries. That's the state's theory of the case. And I have that. The state presented that to an expert. I have that on the easel here. The fingerprint experts, a fellow named Pittman, and they presented evidence that the exonerating reports were forged. This is from the appendix of the original brief. That's what the blow-up is. And what the handwriting expert says is that this Pittman fellow, fingerprint expert, always connects the H and E whenever he writes the word the or the. He might or might not separate the T, but he always connects the H and E. Now, the post-conviction attorney, we know what he did. He talked to police. He talked to the prosecutor. He talked to the state's witnesses. He read the reports. And then he adopted those positions. He didn't do anything to test them. He didn't get a separate fingerprint expert or handwriting expert to test his conclusion. He didn't call me and ask me about it. And he didn't check the public record. I want to make it clear that the expert himself made a good statement as for the basis of his opinion. An expert is supposed to state the basis of his opinion because the opinion is of no more value than the facts on which it's based. They're supposed to do that. And why? So we can test them, so we can check them to see whether they're based in reality. And that's what he didn't do. I think there's not going to be any dispute at all, but this second part below here is the genuine handwriting of Pittman. The state submitted this in support of a motion here. It's part of that same group of records and reports that this expert is supposed to have been relying on, the handwriting expert. But you can see here there are 16 examples highlighted there in green. And every single one of those, the genuine Pittman separates the H and the E. This handwriting expert's no good. He's contradicted by the record itself. And this attorney was supposed to look for ways to support the client's claims, not look for ways to get out of doing his job. He's not supposed to file a motion to withdraw without checking to see whether what the state's witnesses have said is correct. This is not a subjective impression about me pretending to be a handwriting expert. This is simply testing a specific statement of fact that this handwriting expert made. He says, this is how this guy writes. And this is right in this court's record, shown in the conference. But what does it mean that Mr. Smith chose to proceed on his position pro se? Did he choose to proceed pro se? Oh, no, I'm sorry. If I said that, I certainly didn't mean it. But he did proceed pro se, didn't he? Yeah, but he didn't intend to. That's the second part. The first part is the attorney's failure to prepare. And we've already talked about that, the failure to know and then the failure to find support. The second part is 651 violation for failing to present. Now, the attorney filed a motion to withdraw. First, let's go back further up. There's an appointment of counsel. And so we know he entered an appearance and he was on the case. He filed a motion to withdraw. That motion to withdraw was taken under invitement and never ruled on. Now, the state argues that was a de facto ruling. Well, I don't know that. Do you think there is any such thing? I don't. Being counsel of record means something. And there's also Supreme Court Rule 13 that requires a written notice to the client that you're no longer on the case. What does the record show on the day of the hearing, though? I mean, and I haven't seen the record, but did the judge say your attorney's not here? Do you want a continuance or do you want to proceed? Or was he given choices? Oh, I see what you mean. No, what happened was at the time that there was a hearing on the motion to withdraw, the judge said I'll take that under advisement. And then there was never any further discussion about that. It was just everybody just went forward and Mr. Smith represented himself. We'd ask that the decision be reversed in case you're managing further. Thank you, Mr. Wells. You can read that later, Mr. Daly. Good morning. Good morning. Counsel? Do you want me to leave this up here? Well, it's fine. I'm not going to refer to it. This is a very interesting case, and I think it's interesting in the sense that counsel and I kind of approach this from somewhat different angles. Counsel's approach principally relies upon the 651 post-conviction standard. I'd approach this essentially from the defendant's argument back and forwards and looking at this as an ethical rule type of consideration. Counsel starts his argument by basically saying that the motion to withdraw the defendant's analysis of the case is really the same as Andrew's. I have not seen any case that says that. Now I vehemently dispute that characterization of this. I think it's a lot different. I'll get to that in a moment. What's in the record to support your statement that while no order was entered allowing the withdrawal, everyone, including the defendant, treated the attorney's motion to withdraw as granted? Okay. When this came before the court for the motion to withdraw, Mr. Kaff presented his reasons for it the same. Counsel, the court said, and I agree this is correct, the court said, well, I'll rule out on this after you file your 651C certificate. Let me ask a question. Was the defendant present in the courtroom? Yes. Okay, go ahead. In fact, I was the defendant present in the courtroom. He spoke at length after Mr. Kaff made his statements to the court, complaining about Kaff's performance, that he wasn't doing a good forum. It was clear that there was any type of relationship between Kaff and the defendant in this case was not any good. It was pretty toxic at that point. So was there any conversation between the court and the defendant that, look, you obviously don't have confidence in Kaff, so I'm going to eventually grant his motion and you get to either go forward on your own or I'll appoint you a new lawyer? If that were the case, my job would be a lot easier. That's not the case. So that's why I'm going forward to succeed. This is essentially a totality of circumstances. What happened at the conclusion of this hearing is that there was some discussion with the defendant about what he's going to do about a new attorney. It was made fairly clear to Mr. Smith that he was at that point being prosaic. The court was refusing to appoint another counsel for him. That much was articulated. The prosecutor made a statement to the fact that I understand this court's ruling to me that Mr. Kaff has been allowed to withdraw, and there was no contestation of that characterization of it, notwithstanding what occurred earlier. As we go further into the record, we see that the defendant did proceed forward, I think fairly characterized under the operation of acting prosaic. He filed numerous motions, one of which is an emergency motion for appointment of counsel. He filed a plethora of other motions, both in the nature of a discovery and others that might be considered somewhat more vexatious. But he's kind of in between a rock and a hard place if the court hasn't acted. I mean, he only can really make those requests by filing a plea deal. Well, the point of the matter, Your Honor, is in doing research on this case, I attempted to find some case law that states that. Is the absence of a court's order allowing the defendant's counsel to withdraw? Is it a particular action, the absence of which impacts everything that occurs after that? And I could not find any case that says that, nor is it on the side of here. The defendant cited Rule 13 in his reply brief. I'll talk about that in a moment. That being the case, then, then I think that you have to ask yourself, is there anything in the record that shows the defendant believed he was acting between a rock and a hard place? Nothing in this record says that, Judge. I think Mr. Katz is still my lawyer. What's going on in this case? He did ask for another lawyer. He asked for another lawyer. Right. Which I think only underscores the point that he wasn't thinking of Katz as his lawyer anymore. He was thinking, all right, what's my next lawyer? Who's my next lawyer? Why did the trial court appoint him a new lawyer if he asked for one? The court's stated reason, agree with it or not, was that basically he ran out of lawyers. And this case has been going on for a long time. And he was two lawyers? Mr. Katz was the second? Mr. Katz and Mr. McDermott, I believe there's another one that was withdrawn because there was a conflict. There may have been another one. I don't know. I didn't really outline a lot of that. You'll see that from the record itself. It hasn't been raised as an issue of appeal. So I'm sort of in a difficult position to argue whether that's a correct ruling or not. It is what it is. There's a rule that you're out of lawyers? I don't know. I don't know. I don't know. Whatever the case is, at this point, the court had basically advised, and it's pretty clear from the record, that you're not getting another lawyer. It's difficult to reconcile that type of characterization of the stats of the case with this understanding that Katz is still a lawyer going forward once he files a 651 until the court enters some doctrine. So I do want to make one further point in that regard. There has been some analysis in the defendant's argument about whether the analysis of this order renders proceedings afterwards void. It does raise the issue of void versus voidable. I don't believe that it renders anything void. I do believe it renders it voidable. And voidable is an important distinction in the sense that the error is captured by an objection or some sort of affirmative declaration, which seems in this case our ruling had in the absence of some violation of the defendant's rights. But as I said, we don't have that in this situation. The defendant complained about him having a lawyer. He didn't complain about Mr. Katz being his lawyer anymore. And that's the distinction that I attempt to cleave in this case between what the defendant's argument is here. I go backwards in that sense because then I think that that relates to whether or not Katz's representation, whether he was permitted to withdraw, had some validity to it. I don't think that if we can establish the fact, if it could be accepted that Katz had withdrawn from his case, that he had been treated withdrawn. If he hasn't been withdrawn from his case, that's obviously a problem and issue that this Court will have to resolve. It doesn't really matter what this Court feels about the defendant's alternative argument or the first argument regarding the level of or the adequacy of Katz's representation. But doesn't he have a right to a lawyer? He has a right to a lawyer. And did he say he didn't want to have a lawyer? He wanted to proceed pro se? I thought you just told me the judge said you don't get any more lawyers. That's what the judge said. So isn't he between a rock and a hard place? Well, he's between a rock and a hard place between having another lawyer and having no lawyer. But that's not the issue. That's not the issue of the argument. The issue of the argument is does he have Mr. Katz or doesn't he? But he's not a lawyer. He doesn't. I mean, well, go ahead. You're putting me between a rock and a hard place because you're asking me to argue something I don't really have the quips to perhaps approach at this juncture. Going back to the motion to withdraw, I believe that Katz's rationale is premised upon an articulation of the rules of ethics. And one of those rules is that if an attorney has a reasonable belief that something is being withdrawn from the court, then he has no obligation to present that. And I think Katz's position is in the absence of that particular evidence, he doesn't have the grounds for which to proceed in further representation of the defendant. This is not an unusual thing. Nobody's disputing that he has an obligation to withdraw if he thinks there's a forgery being foisted upon him. Well, and that's the point, is I'm not necessarily arguing whether it is or isn't a forgery. I don't know. I'm not an expert witness. And I'm not here to argue one way or the other. Mr. Wells does an eloquent job, I think, of making a case for the defendant's behalf. But I don't think it's necessarily germane to this particular issue. Katz stated that he had a reasonable belief based upon his review of the expert, his own admittedly unscientific view of the case, and evidence that he obtained from the lab Freedom of Information Act. That's what he stated in his memorandum to the court anyway. So I don't think it's an antitype situation at all. I don't think that there's some freestanding obligation on the defense counsel's part to come to a reasonable belief and then work forward and try to figure out a way to dispute that particular belief. He stated it happens whether it bears the ultimate weight of truth or not. In the end run, it isn't the standard. The standard is whether he had a reasonable belief. And I believe that at least it could be argued quite clearly that it wasn't. So really, if the note of the case is, I think, that Katz withdrawn, our argument is that Katz withdrawn from the case. That run is essentially inconsequential or irrelevant to the point whether Katz provided adequate representation under 651 because his representation had terminated at the time that he had moved to withdraw. And what we're arguing is essentially a de facto acknowledgment of that. I wish that Judge Dowling had probably been more vigilant in that, but in the sense of things that judges, like all of us, overlook things, particularly in the case of this type of complexity and numerous motions being filed. So I would ask the Court, if it has no further questions, to affirm the judgment. Thank you. Thank you, Mr. Daly. Mr. Wells, rebuttal. Thank you. I'm really kind of surprised by the dispute concerning the standard here. I thought that that was pretty well established. The motion to withdraw was filed under the authority of a people versus career, and we cite that on page 5 of the reply brief, and it's mentioned in the original brief as well. And in that case, the U.S. Supreme Court said that there was no obligation to go forward and present a frivolous post-conviction petition. If the petition is frivolous, the attorneys can move to withdraw. Are you saying Mr. Katz cited people versus career in his motion? Yes, I believe that's so. And I didn't know there was any contention about it, or we might have made a bigger point, but they cite to, the U.S. Supreme Court cites to McCoy v. Court of Appeals of Wisconsin for the authority as to what the standard is, and that court said, this is also on page 5 of the reply brief, the attorney must still provide his or her client precisely these services that an affluent defendant would obtain from paying counsel. A thorough review of the record, a discussion of the strongest arguments revealed by that review, and searching for the strongest arguments available, the attorney must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client. Now, that's the case that the attorney was using to move to withdraw. So Katz basically said, I can't be an advocate for this man, and he got no advocate. That's right. That's exactly right. And we know he didn't check the record because he didn't say anything about the actual innocence claim. He didn't say anything about the DNA test, the record's full of it. It's the most important piece of evidence in the case, the ejaculate left by the two attackers. He doesn't say one word about it. And then he adopts the opinion of the state's expert, and he doesn't get an independent expert. He doesn't call me. I could have pointed that out to him in two minutes. So he didn't do his job. He filed it at 651, and that's the first day of reversal. Is there anything in the record that he didn't call you? Oh, oh. Just curious. He left a detailed record of what he did do. And he talked about what he did do in his motion. And it didn't include a phone call. No, we didn't. And there's nothing there about contacting any prior defense witnesses, no prior defense counsel. He didn't ask for any help from any defense side of the case at all? Thank you, Mr. Wells, Mr. Daly. Thank you for your briefs and argument. We'll take the matter under advisement, render a ruling in due course.